<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL A. GARCIA, | : | Civil No.: 10-1725 (JBS) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| WARDEN DONNA ZICKEFOOSE, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    MICHAEL A. GARCIA, Petitioner <u>Pro Se</u>
    #40236-424
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640

    MARK CHRISTOPHER ORLOWSKI, AUSA
    OFFICE OF THE U.S. ATTORNEY
    DISTRICT OF NEW JERSEY
    402 East State Street, Room 430
    Trenton, New Jersey 08608
    Counsel for Respondent

**SIMANDLE**, District Judge:

    On or about April 6, 2010, petitioner, Michael A. Garcia ("Garcia"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison disciplinary action. He filed a supplemental petition on April 19, 2010. Garcia asks the Court to expunge the disciplinary sanctions imposed against petitioner, to re-classify petitioner to original minimum security status, and to transfer petitioner

to a prison camp in the Midwest Region so that he may be near his family.  The named respondent is FCI Fort Dix Warden Donna Zickefoose.  Respondent answered the petition on June 7, 2010, and provided a copy of the pertinent administrative record. (Docket Entry No. 7).  On June 25, 2010 and December 2, 2010, Garcia filed motions to supplement his brief and reply to Respondent's answer.  (Docket entry nos. 9 and 10).  On February 2, 2011, Garcia filed a motion to stay the proceedings so that he could file all supplements in a traverse to the Respondent's answer.  (Docket entry no. 11).  Petitioner then filed his traverse/objections to the Respondent's answer on March 14, 2011. (Docket entry no. 12).  This Court granted Petitioner's motions and deemed his reply/traverse as filed within time in an Order entered on March 25, 2011.  (Docket entry no. 13).

Petitioner has since filed three motions in this matter: (1) a motion to submit additional evidence (Docket entry no. 14); (2) a motion for an evidentiary hearing (Docket entry no. 15); and (3) a motion request for judgment (Docket entry no. 16).

For the reasons set forth below, the Court will deny this habeas petition and the motions for relief will be denied.

## I.  <u>BACKGROUND</u>

Garcia is presently serving an eighty-four (84) month prison sentence imposed by the United States District Court for the Northern District of Illinois, on April 2, 2008, pursuant to his conviction for mail fraud, in violation of 18 U.S.C. § 1343. Petitioner's projected release date is September 7, 2014, assuming he receives all good conduct time ("GCT") available to him under 18 U.S.C. § 3624(b).  (Declaration of Tara Moran, Exhibit 1, SENTRY Public Information Inmate Data).

On June 30, 2008, Garcia was designated to the SPC Marion to serve his federal prison sentence.  (Moran Decl., Ex. 3).  On May 9, 2009, Garcia received Incident Report ("IR") No. 1866582, charging him with Possession or Introduction of a Hazardous Tool, in violation of Code 108.  (Moran Decl., Ex. 4 at ¶ 9).  In describing the infraction, the IR states, in pertinent part:

> (Date: 04-02-2009 [t]ime: 10:20 a.m.  Become aware of incident) On the above date and time I was conducting a search of the SCP Marion leisure library.  During this search I located a blue samsung cell phone and charger hidden in the window air conditioner.  The cell phone was unlocked and contain 2 phone numbers 1 being [redacted]-8899.  This number is listed as belonging to Ephrem Malko who is on Michael Garcia's # 40236-424 contact list.

(Moran Decl., Ex. 4 at ¶ 11).  The IR was signed by reporting employee, Camp Officer J.C. Wright on May 8, 2009.  The IR was delivered to Garcia on May 9, 2009 at 6:10 p.m. by Lt. J. Taylor. Corrections to the IR were made and initialed by Lt. Taylor.  In particular, Taylor initialed a correction in adding a digit to

3

Garcia's inmate number in ¶ 11, and Taylor also initialed a change in the time the IR was signed on May 8, 2009 in ¶ 12. (Moran Decl., Ex. 4).

On May 9, 2009, at 6:10 p.m., Lt. Taylor conducted an investigation and interview of Petitioner.  (Moran Decl., Ex. 4 at ¶ 22).  At this investigation, Garcia was read his rights and elected to make a statement to Taylor, as follows: "I admit I used the phone a few times but it did not belong to me.  I was paying another inmate six dollars every time I used it."  (Id., Ex. 4 at ¶ 24).  Petitioner did not request any witnesses.  (Id., Ex. 4 at ¶ 25).  Taylor noted that Garcia "displayed a FAIR attitude during the course of the investigation."  (Id.).  Based upon Petitioner's admission and the information contained in the IR, Taylor concluded that the IR was valid.  He stated: Inmate Garcia did have access to, and was using, a cell phone which is considered a hazardous tool as it can be used to orchestrate an escape.  This is violation of institutional policy and hinders the ability of staff to control their areas of responsibility." (Id., Ex. 4 at ¶ 26).  The investigation concluded on May 9, 2009 at 6:35 p.m.  (Id., Ex. 4 at ¶ 27).

The matter was referred to the Unit Disciplinary Committee ("UDC") for an initial hearing on May 13, 2009.  Petitioner again was advised of his rights at the hearing on May 13, 2009 at 2:15 p.m.  (Id., Ex. 4 at ¶ 23).  In Part II of the IR, referring to

4

Committee Action, the IR states that Garcia made the following statement to the UDC:  "Several months ago I did use that phone to the person I left my business 'in'."  (<u>Id</u>., Ex. 4 at ¶ 17). The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") and recommended the maximum sanctions if found guilty. (<u>Id</u>., ¶¶ 18B, 20).

The DHO hearing was conducted on May 22, 2009 at 8:18 a.m. (Moran Decl., Ex. 5).  Garcia did not request a staff representative, nor did he call any witnesses at the hearing. (<u>Id</u>., Ex. 5 at Sections II.A and III.C.1).  He did make a statement to the DHO, stating that "I accepted responsibility immediately.  It's mine.  I'm not a hardened criminal."  (<u>Id</u>., Ex. 5 at Section III.B).  The documentary evidence considered by the DHO included the Incident Report and Investigation, the Memorandum dated May 8, 2009, from J. Williams, Counselor, a photograph of the Samsung cell phone and charger, and TRUVIEW/TRULINCS records.  (<u>Id</u>., Ex. 5 at Section III.D).  In addition, confidential information was reviewed by the DHO, but not revealed to Garcia because it contained information received from confidential informants deemed to be reliable.  (<u>Id</u>., Ex. 5 at Section III.E).

At the conclusion of the hearing, the DHO found that Garcia committed the act as charged, and reported as follows:

> You were advised of your rights before the Discipline Hearing Officer and stated that you understood those rights.

5

You requested no staff representative or witness(es) and presented no documentary evidence on your behalf.

This finding is based on the reporting officer's written statement that on May 8, 2009, at approximately 10:20 a.m., while conducting a search of the S.C.P. Marion leisure library, I located a blue Samsung cell phone and charger hidden in the window air conditioner.  The cell phone was unlocked and contained two phone numbers, one being [redacted].  This number is listed as belonging to Ephrem Malko who is on Michael Garcia's [redacted] contact list.

The DHO considered the memorandum dated May 8, 2009, from J. Williams, Counselor, stating in part, Officer Wright did bring me a blue Samsung cell phone.  The phone contained one phone number that is listed to Ephrem Malko [redacted].  This person is on inmate Garcia's contact list.  The DHO also considered photographs of the Samsung cell phone/charger, as well as the TRUVIEW/TRULINCS records reflecting Ephrem Malko is on Michael Garcia's [redacted] contact list.

The DHO considered your admission of the charge at the DHO hearing, where you stated, "I accepted responsibility immediately.  It's mine.  I'm not a hardened criminal."

Based on the greater weight of the evidence, the DHO finds you committed the prohibited act of Possession of a Hazardous Tool, Code 108.

(Id., Ex. 5 at Section V).

The DHO sanctioned Petitioner to 41 days loss of GCT, 30 days disciplinary segregation (suspended pending 180 days clear conduct), 180 days loss of commissary and visiting privileges, one year loss of telephone privileges, and recommended a disciplinary transfer.  (Id., Ex. 5 at Section VI).

The DHO based its sanctions on the following reasons:

Possession of a cell phone is considered a hazardous tool in a correctional environment, as it can be used in an escape attempt or to serve as a means to introduce contraband, circumvent inmate phone monitoring, and pass on illicit

information.  The sanctions imposed by the DHO were taken to
express the gravity of the infraction and let the inmate
know that he, and he alone, will be held responsible for his
actions at all times.  Although not directly related to the
infraction, commissary privileges were taken to deter the
inmate from this behavior in the future.  It is felt the
sanction of Disciplinary Transfer is specifically warranted
because of the nature of the facility the inmate is
currently designated to.  Cellular telephones are considered
sensitive equipment.  The action on the part of any inmate
to possess a hazardous tool, (cellular phone/charger) in any
correctional institution seriously jeopardizes the security
of the institution and poses a threat to the ability of
staff to provide for the safety and security of staff,
inmates, and the general public as a whole.  Possessing a
cellular phone gives an inmate the opportunity to make
completely unmonitored calls.  These calls can contain
threats to the general public, plans for an escape attempt,
or planning/participating in other illegal activity.  This
type of contraband is not given to inmates through
authorized channels, and, therefore, must be introduced from
outside elements such as inmate visitors.  Therefore, a
transfer to an area outside of the boundaries of the
inmate's family and community ties will help eliminate the
potential for this type of behavior in the future.

(Id., Ex. 5 at Section VII).

The DHO Report was dated August 28, 2009 and was delivered
to Garcia on September 11, 2009.  (Id., Ex. 5 at Section IX).

On September 22, 2009, Garcia was transferred to FCI Fort
Dix.  (Id., Ex. 3).  Garcia attempted to administratively appeal
the DHO's finding and sanctions.  On or about October 30, 2009,
he appealed the DHO decision directly to the Warden at FCI Fort
Dix, which was rejected for filing at the wrong level, and to the
Regional Office, which was rejected because it did not contain a
copy of the DHO Report.  (Id., Ex. 2).  Garcia re-filed his
appeal with the Regional Office on November 20, 2009, and this

7

appeal was rejected as untimely.  (Id.).  Garcia then filed an

appeal of the DHO decision to the Central Office on February 25,

2010, which also was rejected as untimely.  (Id.).

On June 2, 2010, Warden Zickefoose gave notice to Garcia

that his disciplinary action was being remanded to the DHO at FCI

Fort Dix for a new hearing.  The notice also informed Garcia

that, following the hearing, he may recommence the administrative

appeal process.  (Id., Ex. 7).  The remanded hearing was held on

June 4, 2010.  At the hearing, Garcia's statement was summarized

as follows:

> Inmate Garcia, Michael register number 40236-424 was read
> his rights before the DHO, and stated he understood his
> rights.  He was read the body of the incident report and
> made the following statement: "I was not doing any of that.
> They made me say I made the call."  The DHO asked, Your
> stating that the staff coerced you into saying you used a
> cell phone?"  He replied, "I never used that phone."  The
> DHO read the statement made to the investigating lieutenant.
> He replied, "I didn't know what was going on.  That's what I
> originally told the Lt.  That's when I admitted to making
> the call."  The DHO asked, "How did this number get on the
> cell phone?"  He replied, "He is my friend.  I don't know
> how it got on the phone."  The DHO read the statement made
> at the first DHO hearing where it shows you accepted full
> responsibility immediately.  It's mine.  I'm not a hardened
> criminal."  The DHO stated, "This contradicts your statement
> earlier."  He had no comment.

(Id., Ex. 8 at Section III.B).

At the conclusion of the re-hearing, the DHO found that

Garcia had committed the prohibited act Code 305 violation.

(Id., Ex. 8 at Section IV).  The DHO stated that Garcia:

> ... did commit the prohibited act of Possession of anything
> unauthorized, a cell phone.

8

This decision is based on the greater weight of evidence
provided before me which is documented in the written report
provided by the reporting employee.  The employee
documented,

"On the above date and time I was conducting a search of the
SCP Marion leisure library.  During this search I located a
blue Samsung cell phone and charger hidden in the window air
conditioner.  The cell phone was unlocked and contain 2
phone numbers 1 being [redacted]-8899.  This number is
listed as belonging to Ephram Malko who is on Michael
Garcia's # 40236-424 contact list."

The DHO took into consideration your statement,
specifically, "I was not doing any of that.  They made me
say I made the call."  The DHO asked, "Your stating that the
staff coerced you into saying you used a cell phone?"  He
replied, "I never used that phone."  The DHO read the
statement made to the investigating lieutenant.  He replied,
"I didn't know what was going on.  That's what I originally
told the Lt.  That's when I admitted to making the call."  I
found you have every reason to make this assertions in an
effort to have the charge against you expunged.
Essentially, you have everything to gain and nothing to lose
in that effort however, I found the employee involved in
this incident to be more credible than yourself as he has no
vested interest in you, outcome of the report, and does have
a legal obligation to be truthful.  While you deny using the
cell phone you had stated to the investigating Lt. That you
were paying another inmate every time you had to use it.

The violation of Prohibited Act Code 108, possession of a
hazardous tool (cell phone), is supported in the incident
report, specifically, "On the above date and time I was
conducting a search of the SCP Marion leisure library.
During this search I located a blue Samsung cell phone and
charger hidden in the window air conditioner.  The cell
phone was unlocked and contain 2 phone numbers 1 being
[redacted]-8899.  This number is listed as belonging to
Ephram Malko who is on Michael Garcia's # 40236-424 contact
list."  However, during a subsequent appeal it was found SCP
Marion did not provide their inmates with notice that
possession of a cell phone was changing from a Code 305 ,
Possession of Anything Unauthorized.  Therefore the
rehearing was conducted and the sanctions were changed to
meet the sanctions for a Prohibited Act Code in the 300

series.  Notification will be made to the DSCC to adjust the sentence computation accordingly.

Based upon the evidence provided before me, your actions are consistent with a violation Code 305-Possession of Anything Unauthorized.

(Id., Ex. 8 at Section V).  The DHO sanctioned Garcia to a loss of 13 days GCT.  (Id., Ex. 8 at Section VI).

## II.  STATEMENT OF CLAIMS

Petitioner raises the following claims in his habeas petition and supplemental pleadings:

Ground One: The Incident Report was "completely fabricated and all evidence manufactured."  "Numerous inconsistencies within the incident report call[] the report's integrity and validity into serious question."

Ground Two: The Failure to provide Petitioner with notice that punishment for the charged misconduct had been increased from a moderate level violation to a greater severity level violation deprived Petitioner of his due process rights, in particular, notice of charges against him.

Ground Three: The rule changes concerning the greater severity level code violation did not comport with the Administrative Procedures Act.

Ground Four: Petitioner was denied his right to due process and equal protection under the Fifth Amendment.

Ground Five: The Code 108 Violation charged is void for vagueness.

10

Ground Six: Petitioner was treated differently from other similarly situated inmates within the Federal Bureau of Prisons ("FBOP") in violation of his right to equal protection of the law.

This Court finds that Grounds Two, Three, and Five are now rendered moot because the FBOP provided a remanded hearing based on Petitioner's arguments on administrative appeal regarding notice of a Code 108 violation.  Specifically, it was determined that SCP Marion did not provide their inmates with notice that possession of a cell phone was changing from a Code 305 violation to a greater severity level Code 108 violation.  Further, although Garcia did not raise his equal protection claim (Ground Six) in his administrative appeal, the claim essentially asserts that he was treated differently from other inmates with respect to the Code 108 charge.  As that charge was rescinded, the equal protection claim is likewise rendered moot.  Therefore, only Grounds One and Four remain at issue here.

Respondent counters that the petition should be dismissed without prejudice because Garcia failed to exhaust his administrative remedies.  Respondent also argues that Garcia was afforded all requisite due process protections, and that the DHO's decision is supported by the "some evidence" standard. Further, the sanctions imposed were within the permissible range for the prohibited act Garcia was found to have committed.

11

Finally, Respondent argues that Garcia has no liberty interest in placement in any specific institution or security level.

III.   <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

Garcia seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[1]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

_____

[1]  United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

12

B.  <u>Applicable Regulations</u>

        The Federal Bureau of Prisons ("BOP") has specific
guidelines for inmate disciplinary procedures, which are codified
at 28 C.F.R. § 541.10 <u>et seq</u>.  Prohibited acts are categorized
according to the severity of the conduct.  Code Level 100s are
deemed the "Greatest", code level 200s as "High", and proceeding
to 400 level codes as "Low Moderate."  The Prohibited Acts Code
and Disciplinary Severity Scale is set forth at 28 C.F.R. §
541.13 Tables 3-5.  Incident reports are prepared in accordance
with § 541.14 and are referred to the UDC for an initial hearing
pursuant to § 541.15.

        The UDC hearing is typically conducted within three working
days of the incident, but may be extended for good cause pursuant
to § 541.15(b) and (k).  The UDC may refer the matter to the DHO
for further proceedings pursuant to § 541.15(f).  In this case,
referral of the incident report to the DHO was mandatory under §
541.13(a)(2), because the charge was designated as a "High"
category offense and the UDC does not have the authority to
disallow good conduct time.  Disallowance of good conduct time
credits for high category offenses, pursuant to Sanction B.1 in
Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

        DHO hearing procedures are set forth at § 541.17.  These
procedures require the following: (a) 24-hour advance written
notice of charge before inmate's initial appearance before the

13

DHO; this right may be waived, § 541.17(a); (b) an inmate shall
be provided a staff representative at the DHO hearing, if so
desired, § 541.17(b); (c) an inmate is entitled to make a
statement and to present documentary evidence at the DHO hearing;
the inmate may also call witnesses to testify on his behalf, but
may not himself question the witnesses, § 541.17(c); (d) the
inmate is entitled to be present throughout the hearing, except
during a period of deliberation or when institutional security
would be jeopardized, § 541.17(d).  The DHO shall prepare a
record of the proceedings that documents the advisement of the
inmate's rights, the DHO's findings, the DHO's decision, the
specific evidence relied upon by the DHO, and a brief statement
of the reasons for imposition of sanctions.  28 C.F.R. §
541.17(g).  A written copy of the DHO's decision and disposition
must be provided to the inmate ordinarily within 10 days.  Id.

       These procedures are intended to meet or exceed the due
process requirements prescribed by Wolff v. McDonnell, 418 U.S.
539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418
(M.D. Pa. 1994).

C.  Exhaustion of Administrative Remedies

       As an initial matter, Respondent argues that Garcia did not
fully exhaust his administrative remedies before filing this
habeas petition.  Although 28 U.S.C. § 2241 contains no statutory
exhaustion requirement, a federal prisoner ordinarily may not

bring a petition for writ of habeas corpus under 28 U.S.C. §
2241, challenging the execution of his sentence, until he has
exhausted all available administrative remedies.  See, e.g.,
Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v.
United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981);
Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The
exhaustion doctrine promotes a number of goals:

>      (1) allowing the appropriate agency to develop a
>      factual record and apply its expertise facilitates
>      judicial review; (2) permitting agencies to grant the
>      relief requested conserves judicial resources; and (3)
>      providing agencies the opportunity to correct their own
>      errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,
248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau
of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,
exhaustion of administrative remedies is not required where
exhaustion would not promote these goals.  See, e.g., Gambino v.
Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required
where petitioner demonstrates futility); Lyons v. U.S. Marshals,
840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where
it "would be futile, if the actions of the agency clearly and
unambiguously violate statutory or constitutional rights, or if
the administrative procedure is clearly shown to be inadequate to
prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,
*2 (E.D. Pa. 2000) (exhaustion not required where delay would
subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court finds that, although Garcia had an opportunity to exhaust his administrative remedies, he failed to

16

do so in a timely manner, and his administrative appeals initially were rejected on that ground.  However, based on arguments raised on administrative appeal, Petitioner received a remanded hearing on a lesser severity level charge.  The disciplinary action was affirmed in the second hearing.

The respondent also contends that Garcia did not raise every claim asserted in his habeas petition in his attempts at administrative appeals.  Namely, he did not raise his equal protection arguments.

Nevertheless, because it appears that any attempt to exhaust administrative remedies now would likely be futile, as it is "almost certain" based on the evidence that the Regional Director would deny Garcia's appeal, and because it is plain that Petitioner's remaining claims are without merit, this Court concludes that the exhaustion issue need not be reached and accordingly, the Court will address Petitioner's remaining claims in Grounds One and Four of his petition.

D.  <u>Merits of Petitioner's Claims</u>

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth and Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary

17

hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, the record shows that Garcia received all of the due process protections set forth in Wolff.  First, Garcia had sufficient and timely notice of the charges against him, allowing him ample time to prepare a defense.  While Garcia tries to argue that there was a long gap of time between when the cell phone was

found and when he received notice of the charges (in an attempt to question the integrity of the incident report and claim that it was fabricated), the record shows that he received notice of the incident report more than 24 hours before his UDC hearing. He received the incident report on May 9, 2009 and the UDC hearing occurred on May 13, 2009.

Moreover, he received the report one day after it was determined that the cell phone had been used by him.  Garcia points out that the cell phone and charger were found on April 2, 2009, but he did not receive the incident report until May 9, 2009.  However, it would appear that the discrepancy in time is simply attributable to the investigation to determine the origin of the phone numbers found on the cell phone.  Once one of the numbers was traced to Petitioner, an incident report was prepared.  In fact, the TRULINCS record shows a May 8, 2009 date, which was the date that the incident report was drafted. Consequently, there is no support for Garcia's claim that the incident report was fabricated.

In addition, the inconsistencies in Lt. Taylor's signatures on the incident reports, as noted by Garcia, are easily explained and not nefarious.  As pointed out by Respondent, Garcia's Exhibit 2a is the incident report prior to the UDC hearing, and Exhibit 2b is the copy of incident report and the UDC hearing. Moreover, the Court finds no difference in the signatures of Lt.

19

Taylor on the incident report.  His signature is the same as in ¶ 14, 23 and 27 of the report.  There are signatures in ¶ 21 of the UDC hearing members.  And Lt. Taylor merely initialed the corrections on the incident report adding Garcia's full inmate number in ¶ 11 and correcting the time (7:00 p.m.) when Officer Wright, the reporting officer, signed the incident report on May 8, 2009.  Therefore, there is no basis for Garcia's allegations that the incident report and the evidence were fabricated or that signatures were falsified.[2]

Finally, the record shows that Garcia was afforded all the procedural rights to which he was entitled under <u>Wolff</u> and <u>Von Kahl</u>.  There is no allegation that Garcia was denied the opportunity to call witnesses or introduce documentary evidence. In fact, the record shows that Garcia initially acknowledged making the calls.  The second hearing does not show that Garcia asked to call any witnesses or present a defense.  Petitioner received a written report of the decision which explained the DHO's findings, the evidence relied upon by the DHO, and the reasons for the sanctions imposed.  Accordingly, this Court

---

[2]  Garcia also attempts to argue that his initial admission of guilt was coerced.  However, he provides no factual support for this allegation.  The incident report shows that the interview conducted by Lt. Taylor on May 9, 2009 started at 6:10 p.m. and concluded at 6:35 p.m., for a total of 25 minutes.  It was within this short period of time that Garcia freely admitted to use of the cell phone.  There are no allegations of physical force or other harsh conditions that would support a claim of coercion or duress.

concludes that Garcia has not demonstrated any denial of due process to warrant a grant of habeas relief.

2. *There Was Sufficient Evidence to Support the Charge*

Garcia also argues that there was inadequate or fabricated evidence to support the DHO's finding that he violated Code 108. As explained above, the discrepancies alleged by Garcia do not support his claim that the disciplinary charge was false or fabricated. Moreover, Garcia had initially admitted that he used the cell phone a few times, although it did not belong to him. Rather, he paid another inmate $6.00 every time he used it.

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require

21

evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the investigation and reporting officer's description of the incident as set forth in the Incident Report, which detailed the discovery of the cell phone and charger, the connection between Petitioner and one of the numbers used on the cell phone, as well as Petitioner's admission that he used the cell phone several times.  As discussed previously, there is no support for Petitioner's claim that the incident report and evidence were fabricated; nor is there any support for his belated refutation of his admission.  There is no evidence that he was coerced or was otherwise placed under conditions of duress to induce a confession.

Further, the mere act of possessing and using the cell phones in prison, in and of itself, circumvents the Inmate Telephone System ("ITS"), and is sufficient in satisfying the evidentiary standard required by due process in prison disciplinary proceedings.  The DHO provided ample support for the sanctions imposed based on the evidence that Garcia had used the cell phone.  Specifically, the DHO stated:

22

> ... Possessing a cellular phone gives an inmate the
> opportunity to make completely unmonitored calls.  These
> calls can contain threats to the general public, plans for
> an escape attempt, or planning/participating in other
> illegal activity.  This type of contraband is not given to
> inmates through authorized channels, and, therefore, must be
> introduced from outside elements such as inmate visitors.
> Therefore, a transfer to an area outside of the boundaries
> of the inmate's family and community ties will help
> eliminate the potential for this type of behavior in the
> future.

(Id., Ex. 5 at Section VII).  At the re-hearing on the reduced

disciplinary code 305 violation, the DHO reiterated the reason

for the sanction imposed (13 days disallowance of GCT):

> The action on the part of any inmate to have possession of
> anything which is not authorized interferes with the staffs
> ability to account for all inmate property and perform
> proper shakedowns of the inmate's assigned area.
> Unauthorized items can be used for illegal purposes, drugs
> and/or intoxicants and, therefore, cannot and will not be
> tolerated.  A cell phone falls under the classification of
> an unauthorized item, as it can be used to arrange
> rendezvous for escapes, and can be used to arrange
> contraband introductions, and further allows the inmate to
> make contact with individuals outside the institution,
> possibly for illicit or illegal activities, without the
> knowledge of staff.

(Moran Decl., Ex. 8 at Section VII).

Consequently, the DHO's Reports plainly show that it was

"not so devoid of evidence that the findings of the [DHO were]

without support or otherwise arbitrary."  Hill, 472 U.S. at 457.

Garcia has not proffered any evidence of unreliability sufficient

to undermine the "some evidence" standard.

Accordingly, this Court finds that there was more than

sufficient evidence to support the DHO findings that Garcia had

committed the prohibited acts as charged.  Garcia failed to

proffer any sufficiently credible contradictory evidence.  The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Garcia has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

3.  *The Sanctions Imposed Were Not An Atypical Or Significant Hardship on Petitioner.*

Garcia's main challenge here appears to be the initial sanctions imposed, namely, his transfer from SCP Marion to FCI Fort Dix.  Petitioner's disciplinary transfer to FCI Fort Dix was imposed based on the initial finding of guilt on the Code 108 violation.  However, after his remanded hearing, and the finding of guilt on a reduced Code 305 violation, with a sanction of only 13 days loss of GCT, Petitioner now argues that his disciplinary transfer is not supported and he should be transferred back to a facility in the Midwest Region.  He claims the sanction is excessive and constitutes cruel and unusual punishment and a violation of his First Amendment rights for visitation.

24

The Respondent argues that the sanctions as imposed were within the range of sanctions available for the violations of Code 108[3] and Code 305, and did not impose an atypical or significant hardship on Petitioner.

Code 305[4] violations allow the DHO to impose a range of sanctions, as set forth in subpart A through M under 28 C.F.R. § 541.3(b), Table 1.  A change in housing or quarters is a listed sanction in subpart G.  See also BOP Program Statement 5270.07, Inmate Discipline.  Therefore, this Court finds that the sanctions imposed, including the disciplinary transfer, are within the range of sanction listed under 28 C.F.R. §541.3(b), Table 1).

Moreover, the sanctions do not work an "atypical and significant hardship" on Petitioner, and do not serve to extend his confinement beyond the expected parameters of his sentence. See Sandin v. Connor, 515 U.S. 472, 484-85 (1995).[5]

---

[3]  Respondent notes that the sanctions for the original Code 108 violation have since been removed.  However, it is plain that the sanctions that were originally imposed were within the permissible range of sanctions for a Greatest Severity Offense under 28 C.F.R. § 541.13(a)(1).

[4]  Code 305 is a "moderate category" offense.

[5]  Under certain circumstances, liberty interests may arise under the Due Process Clause or by operation of state law or regulations.  Sandin, 515 U.S. at 483-84.  Sandin also applies to Fifth Amendment claims involving federal prison regulations. Castillo v. FBOP, No. 05-5076, 2006 WL 1764400, *3 (D.N.J. June 23, 2006), aff'd, 221 Fed. Appx. 172 (3d Cir. 2007). Nevertheless, such liberty interests are implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or

Consequently, Garcia has failed to demonstrate a constitutionally protected liberty interest in the loss of visitation privileges as he alleges is the result of his transfer to FCI Fort Dix.  He also fails to show that the disciplinary sanctions were arbitrarily applied or are unreasonable.  The sanctions are consistent with the applicable regulations, and Garcia may freely communicate with family and friends by mail as an alternative to visitation.

Therefore, Passe's claim challenging the sanctions imposed will be dismissed for lack of merit.

4.  *No Liberty Interest in Placement in Any Specific Facility or Security Level.*

Finally, Garcia seeks to be reclassified to a minimum security level institution in the Midwest Region to facilitate his reentry and community ties upon release.  Respondent correctly argues that Petitioner has no liberty interest in placement in any specific institution or security level.

In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification, so long as the conditions or degree of the inmate's confinement falls within the sentence imposed upon him and does not otherwise violate the U.S. Constitution.  <u>See</u>

---

creates a "major disruption in his environment." <u>Sandin</u>, 515 U.S. at 484-86.  Disciplinary action by federal prison officials in response to a wide range of misconduct is not atypical but rather, falls within the expected parameters of a sentence imposed by a court of law.  <u>Id</u>. at 485.

Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Moody, 429 U.S. at 88 n. 9 (noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"); Wesson v. Atlantic County Jail Facility, 2008 WL 5062028, *6 (D.N.J. Nov. 26, 2008)(it is well established that an inmate has no liberty interest in a particular custody level or place of confinement). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met). See also Marti v. Nash, 227 Fed. Appx. 148, 150 (3d Cir. 2007)(inmate has no due process right to any particular security classification and, therefore, could not challenge his public safety factor of "greatest severity", which prevented his placement in a minimum security facility); Day v. Nash, 191 Fed. Appx. 137, 139-40 (3d Cir.

27

2006)(upholding application of a public safety factor to inmate's custody classification which prevented inmate's placement in a minimum security camp); Stringer v. Bureau of Prisons, 145 Fed. Appx. 751, 753 (3d Cir. 2005)(inmates have no constitutional right to a particular classification).

In this case, Garcia has not demonstrated a liberty interest in being designated to a particular institution or reclassified to a lower security classification level. Moreover, he has not shown that his confinement at FCI Fort Dix, a low security prison facility, has imposed an atypical or significant hardship. Therefore, this claim will be denied.

E.   New Traverse Claims

In his traverse submitted on or about March 14, 2011, Petitioner appears to make new allegations concerning an entirely different incident report (occurring at FCI Fort Dix on August 20, 2010, for using TRULINCS during work hours), and claims of retaliation by FCI Fort Dix staff, namely, Unit Manager Carroll and Case Manager Bullock, against Petitioner for filing grievances, in violation of Petitioner's First Amendment rights. These new allegations now asserted by Garcia in his Traverse are more properly brought in a civil rights complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Therefore, as these new allegations are unrelated to the incident report at issue in this habeas petition, and because these new allegations would not give rise to habeas relief under

§ 2241 (which is the substantive right claimed in the present case) they will be dismissed without prejudice to any right Petitioner may have to reassert his new claims in a properly filed civil rights complaint.[6]

F.   Petitioner's Motions Are Moot

On April 28, 2011, Garcia filed a motion seeking to add evidence in support of his claims asserting deprivation of a liberty interest, and violations of due process and equal protection rights.  (Docket entry no. 14).  On May 2, 2011, he filed a motion for an evidentiary hearing.  (Docket entry no. 15).  And finally, on September 22, 2011, Garcia filed a motion requesting entry of judgment in his favor.  (Docket entry no. 16).  These motions will be denied as moot.

First, the motion to submit additional evidence refers to an issue involving his public safety factor and minimum security status classification.  As this claim has been denied, see this Opinion at III.D.4, supra, the motion is rendered moot. Petitioner's motion adds no information that would serve to change this Court's determination on this issue as set forth above.

Next, the motion for an evidentiary hearing is rendered moot because this Court has denied the habeas petition for lack of

---

[6]   The Court notes that, should Garcia decide to file a civil rights complaint in this District Court, he must either pay the $350.00 filing fee or submit a complete in forma pauperis ("IFP") application with his certified six month prison account statement, pursuant to 28 U.S.C. § 1915(a)(2).

merit.  The purported inconsistencies or incongruities in the evidence, as alleged by Petitioner, have been found to be illusory and without merit.  Consequently, the request for an evidentiary hearing is denied.

Finally, the motion for judgment is rendered moot by this Court's opinion herein.

Therefore, Petitioner's motions (Docket entry nos. 14, 15, and 16) will be denied.

### CONCLUSION

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. All pending motions for relief, namely Docket entry nos. 14, 15 and 16, will be denied.  An appropriate Order accompanies this Opinion.

 s/ Jerome B. Simandle
JEROME B. SIMANDLE
United States District Judge

Dated:    **December 12, 2011**